UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GARY J SALINAS, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. C-02-214 |
| | § | |
| GARY JOHNSON, *et al*, | § | |
| | § | |
| Respondents. | § | |

**ORDER DECLINING TO ADOPT
MEMORANDUM AND RECOMMENDATIONS
AND ORDER OF DISMISSAL**

On this day came on to be considered Respondent Thaler's Motion to Dismiss for Lack of Jurisdiction as a Successive Petition and Alternative Motion for Summary Judgment with Briefs in Support ("Respondent's Motion").   (D.E. 40.)   For the reasons stated herein, Respondent's Motion is GRANTED, Petitioner Gary Salinas' petition for writ of habeas corpus challenging his convictions for capital murder and attempted capital murder in cause number 97-CR-3827-C is DENIED, and this action is DISMISSED WITH PREJUDICE.

**I.      Jurisdiction**

The Court has subject matter jurisdiction over this action and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained. Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2002). Petitioner was convicted in the 94th Judicial District Court of Nueces County, Texas, (D.E. 1 at 2), and, therefore jurisdiction is proper in this Court.  28 U.S.C. § 124(b)(6).

**II.      Factual Background**

On November 30, 1997, William Kumar Patel and Bharat Patel were shot by an assailant during an attempted robbery at their Times Market convenience store in Corpus Christi, Texas.

Bharat's wounds were fatal.  A store employee, Raymond Palacios, was present at the time and described the shooter as "wearing something resembling a red sweatshirt and hood."  The shooter's face was covered by a bandana, and he ran out of the store after shooting the Patels. (D.E. 53 at 2; D.E. 40 at 5-6.)

Jerry Lee Villarreal, a witness who lived across the street from Times Market, "saw what appeared to be a young man wearing what looked like a red warm-up top with a hood on it" run out of the store after the shooting.   Although it was dark outside, Villarreal stated that the area was well lit.  A second witness, Ignacio Cruz, Jr., was driving near the store with his two year-old daughter when "a short Hispanic man wearing a red sweater with a hood partly covering the back of his head and with a pistol in his hand suddenly ran in the front of his car."  Cruz saw the side of the man's face as he ran past his car and into a nearby park.   Cruz stated that the man soon came out of the park, riding a red bicycle, and he saw the front of the man's face at that time with the aid of streetlights and headlights.  When he realized a shooting had occurred in the store, Cruz entered and told Palacios and William Patel what he had seen. When police arrived at the scene, they entered with guns drawn and believed Cruz was the suspect.   Cruz then explained himself to the police, was ordered outside, but subsequently left the scene without speaking with police officers.  (D.E. 53 at 2-3; D.E. 40 at 6-7.)

After William Patel relayed Cruz's identifying information to the police, officers searched the surrounding neighborhood, and found a red bicycle in the backyard of a home a few blocks away.  The house was a known meeting place and refuge for the Los Encinos gang.  The owner, J.S., consented to a search by officers.   Once inside the home, police found a red sweatshirt in a pile of laundry, and discovered Petitioner Gary Salinas underneath a bed. J.S. claimed she did not know Petitioner was there, and that the sweatshirt belonged to a female

friend.  Petitioner gave police officers a false name. After discovering this false identity, police arrested Petitioner for failing to identify himself. (D.E. 53 at 3-4; D.E. 40 at 8-9.)

Soon after the night of the shooting, J.S.'s son, eight-year-old A.S., was overheard talking about the crime at school. Corpus Christi Police Sergeant Richard L. Garcia met with A.S., and conducted a videotaped interview of A.S. at an "Advocacy Center" where he answered questions about the crime and Petitioner.  A.S. was not under oath at the time, and neither his parents nor his attorney were present.  (D.E. 40 at 10.)

Although A.S. appeared concerned at the beginning of the interview, stating "if I tell somebody my mom will get mad," Sgt. Garcia reminded A.S. several times about the need to tell the truth.  A.S. stated that Petitioner was at J.S.'s house on the night in question, that Petitioner was going to visit A.S.'s brother, and was also going to the "store" on a bike.  A.S. told Sgt. Garcia that Petitioner was wearing a red sweatshirt that night, and that Petitioner was "stoned or drunk, and went to go steal beer."  A.S. claimed that when Petitioner returned to the house, he hid the bullets in a wall (though no such bullets were ever found).  Although A.S. never mentioned Times Market by name, he appeared familiar with the store.  At one point, the officer identified it as the one with the "Indian guys," and A.S. acknowledged that he knew the store. The officer would at times repeat or paraphrase statements to A.S., and A.S. would agree with them.[1]

Sergeant Garcia also interviewed Mr. Cruz.  After he gave a description of the man he saw at the crime scene, Sergeant Garcia prepared a photographic line-up for him with six people fitting the description.  Cruz identified Petitioner's photograph in the line-up, and later identified him in the courtroom as well. (D.E. 53 at 6; D.E. 40 at 10-11.)

---

[1] The summary of A.S.'s videotaped interview is derived from the Court's review of that recording.

At trial, the prosecution called A.S. to testify.  On the stand, he testified that Petitioner had used his bike to go to the store, but claimed that he did not know or could not remember the answer to the prosecutor's other questions.  (D.E. 31 at 8; D.E. 57 at 18.)  Defense counsel chose not to cross-examine him at trial.  Thereafter, the prosecution called Sgt. Garcia to testify about the interview.  As Sgt. Garcia testified, the prosecutor handed him the videotaped recording of the interview, and asked, "[c]an you please tell us what [A.S.] said regarding Gary taking his bicycle?"  Defense counsel objected to this, stating, "Objection, Your Honor," without specifying grounds for the objection.  The trial judge responded, "It's covered under 801, Subsection E, Subsection 1, exception to the rule. Have a seat." Defense counsel said nothing further at that time. Sgt. Garcia proceeded to explain that A.S. told him Petitioner was wearing a red t-shirt with a hood on the night of the murder, he took A.S.'s bike to get some beer at the Times Market, and shortly after he left, he "came running back, entered the house through the back door and . . . threw the red T-shirt on [sic] a room that was attached to the house."  (D.E. 53 at 6-7; D.E. 1 at 25.)

At this point in Sgt. Garcia's testimony, the prosecutor moved to enter the videotaped interview of A.S. into evidence.  Defense counsel objected again and requested a hearing outside the presence of the jury.  He explained that his second objection concerned due process and confrontation issues:

> [T]he Court found that [A.S.] was competent to testify and, in fact, he did testify. The witness, therefore, was available to the Court and to the jury. Due Process and confrontation issues will be violated here. We will be unable to cross-examine here as we were able to do before. We cannot cross-examine a video. We're unable to object to the leading questions which we anticipate are on the video . . .  and this is simply a bolstering of the previous testimony.

(D.E. 1 at 25.)  In response, the trial judge again cited Rule 801(e)(1).  The prosecutor added that the evidence was admissible as impeachment, and the judge overruled the objection and admitted the tape without a limiting instruction.  (D.E. 53 at 7-8; D.E. 1 at 25.)

One of A.S.'s teachers also testified at trial that A.S. told her that Petitioner had taken his bicycle to go steal beer, and that the gun used for the shooting was hidden in the walls in J.S.'s house. A search did not uncover the gun, only "projectiles," and these were never linked to the bullets used in the shooting.  Additionally, the bicycle and sweatshirt found at J.S.'s house were taken into evidence, but they contained no fingerprints, hair, skin, or other evidence linking them to Petitioner.  (D.E. 53 at 8; D.E. 40 at 12-13.)

## III.    Procedural Background

On November 6, 1998, Petitioner was convicted in the 94th Judicial District Court of Nueces County, Texas of capital murder and attempted capital murder, and sentenced to two terms of life in prison.  Salinas v. State, No. 13-98-639-CR, 2000 WL 34251886, at *1 (Tex. App. – Corpus Christi July 20, 2000).  Petitioner appealed to the Texas Thirteenth District Court of Appeals, arguing that the trial court erred by allowing the state to admit hearsay statements made by a child witness to impeach that same witness.   The appellate court affirmed the conviction on July 20, 2000, on the basis that defense counsel failed to make this objection at trial.  Salinas, 2000 WL 34251886; D.E. 53 at 8; D.E. 40 at 3.

On August 3, 2001, Petitioner filed a state petition for habeas corpus. On October 3, 2001, he requested permission to file an out-of-time petition for discretionary review, which the Texas Court of Criminal Appeals granted on October 30, 2002 while dismissing his other allegations.  He filed his petition for discretionary review on December 9, 2002, and the Court of Criminal Appeals denied it on January 22, 2003.  On February 11, 2003, Petitioner filed a second

state petition for habeas corpus, but this was dismissed on April 9, 2003 because his direct appeal was still pending.  On May 14, 2003, Petitioner filed another state petition, which was denied without written order on September 17, 2003. (See D.E. 53 at 9-10; D.E. 40 at 3-4.)

In the meantime, Petitioner filed his federal petition for habeas corpus on May 13, 2002. (D.E. 1).  This Court dismissed the petition on November 14, 2002 as time-barred pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (D.E. 13, 14.)   On November 22, 2002, Petitioner filed a motion to dismiss his petition without prejudice because the Texas Court of Criminal Appeals had allowed him to file a petition for discretionary review, and to reserve the right to file a new petition upon conclusion of that petition. (D.E. 15.)  The Court determined that it no longer possessed jurisdiction over the action and denied Petitioner's motion on December 12, 2002. (D.E. 19.)  On appeal, the Fifth Circuit affirmed the dismissal. Salinas v. Dretke, 354 F.3d 425 (5th Cir. 2004).

On October 9, 2009, Petitioner filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), claiming that the Supreme Court's decision in Jimenez v. Quarterman, 129 S. Ct. 681 (2009) overturned the Fifth Circuit's ruling in his appeal. (D.E. 25). The Court granted Petitioner's Rule 60(b) motion, and vacated the order of dismissal and final judgment.  (D.E. 26.)   The Court also ordered Respondent to address Petitioner's claims within 45 days.  (D.E. 26.)  Petitioner filed an amended habeas petition on November 17, 2009.  (D.E. 31.)

Respondent filed his Motion on February 25, 2010.  (D.E. 40.)  On August 13, 2010, Magistrate Brian L. Owsley issued a Memorandum and Recommendation recommending that Respondent's Motion be denied, and that Petitioner's writ of habeas corpus be granted.  (D.E. 53.)  Respondent filed objections on August 30, 2010.  (D.E. 57.)  Having reviewed the findings

of fact and conclusions of law in the Memorandum and Recommendations, as well as the pleadings on file and Respondent's objections, and having made a de novo disposition of those portions of the Magistrate Judge's recommended disposition to which objections were raised, see Koetting v. Thompson, 995 F.2d 37 (5th Cir. 1993); 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b), the Court hereby declines to adopt the Magistrate's recommendations.[2]

## IV.    Discussion

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 is applicable to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000).  Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law."  Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the

---

[2] The Court notes that Respondent's motion to dismiss Petitioner's habeas petition as successive (D.E. 40 at 14-18) is denied, for the reasons stated in this Court's November 4, 2009 Order.  (D.E. 26.)

existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.     Federal Habeas Corpus Standard of Review Pursuant to the AEDPA**

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam); 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Title 28, Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The provisions of Section 2254(d) set forth a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

While an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears" that the claim has been exhausted at the state level, Section 2254 provides that "[a]n application for a writ of habeas corpus may be **denied on the merits**, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1), (2) (emphasis added).  As the Fifth Circuit has explained, "ordinarily claims not raised in state court . . . cannot be considered on federal-habeas because they are not exhausted.  On the other hand, the court may *deny* (but *not* grant) an unexhausted claim on the merits." Pondexter v. Quarterman, 537 F.3d 511, 527 (5th Cir. 2008) (internal citations and quotation marks omitted); Neville v. Dretke, 423 F.3d 474, 482 (5th Cir. 2005) ("[C]onsistent with its goal of providing for the speedy resolution of federal petitions, AEPDA provides that applications may be denied on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'").

Here, Petitioner's primary argument for federal habeas relief,[3] violation of the Confrontation Clause, was not presented to the Texas state courts on appeal. Salinas, 2000 WL

---

[3] Petitioner also argues (1) improper use of hearsay evidence, (2) ineffective assistance of appellate counsel, and (3) ineffective assistance of trial counsel.  (D.E. 31 at 7-11.)   The Court briefly addresses these arguments after consideration of the Confrontation Clause issue.

34251886.  Petitioner argues that this procedural bar is excused because his appellate counsel was ineffective in failing to raise this issue. Because the Court ultimately decides to deny habeas relief, the Court directly considers the merits of Petitioner's Confrontation Clause argument.  28 U.S.C. § 2254(b)(2).

      **C.**      **Confrontation Clause**

The Confrontation Clause of the Sixth Amendment to the U.S. Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. Const. Amend VI.   Petitioner contends that his Confrontation Clause rights were violated when the trial court admitted A.S.'s out-of-court statements, through the introduction of his videotaped interview and Sgt. Garcia's statements as to what A.S. told him during the interview.  (D.E. 31 at 7.)   Respondent contends <u>inter alia</u> that admission of A.S.'s out-of-court statements did not violate Petitioner's Confrontation Clause rights because A.S. was available and actually testified at trial.  (D.E. 40 at 29.)

Upon review of the facts and the applicable law, the Court rejects Petitioner's Confrontation Clause argument.  As both parties acknowledge, A.S. was called by the prosecutor and testified at trial.   When A.S. could not recall or did not know the answers to certain questions, Petitioner's defense counsel decided not to conduct cross-examination.   Thereafter, the videotaped interview and other out-of-court statements were admitted.

The Supreme Court has addressed the rules applicable to out-of-court statements when a declarant is available to testify at trial.[4]  In <u>Green v. California</u>, the Supreme Court explained:

---

[4]  Although <u>Crawford v. Washington</u> significantly altered the Confrontation Clause analysis, that decision lacks retroactive effect.  Because Petitioner's trial took place in 1998, and was final on direct review in 2003, the 2004 <u>Crawford</u> decision has no effect. <u>See</u> <u>Whorton v. Bockting</u>, 549 U.S. 406, 409 (2007) ("This case presents the question whether . . . our decision in <u>Crawford</u> . . ., is retroactive to cases already final on direct review.  We hold that it is not."); <u>Woodfox v. Cain</u>, 609 F.3d 774, 799 (5th Cir. 2010) ("Crawford is not relevant to our consideration, however, because it was decided after Woodfox's 1998 trial and it does not apply retroactively.").

> The Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. . . .
>
> None of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial. The concern of most of our cases has been focused on precisely the opposite situation – situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial. . . .
>
> Where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem. . . .
>
> The Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.

Green, 399 U.S. at 158-164.  Green left open the question of whether a declarant's prior out-of-court statements to a police officer were admissible under the Confrontation Clause when that declarant claimed at trial that he could not remember the events at issue.  399 U.S. at 169.  That question was answered in U.S. v. Owen, where an assault victim's prior statements to an FBI agent were admitted following memory loss.  The Court explained:

> [In Green] [w]e declined . . . to decide the admissibility of the . . . witness' out-of-court statements to a police officer concerning events that at trial he was unable to recall.  . . . Justice Harlan . . . stated that he would have reached the issue of the out-of-court statement, and would have held that a witness's inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. . . ."
>
> Here that question is squarely presented, and we agree with the answer suggested . . . by Justice Harlan.  '**The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish . . . [T]hat opportunity is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief.  It is sufficient that the defendant has the opportunity to bring out such matters as the witness'**

**bias, his lack of care and attentiveness, his poor eyesight, and even . . . the very fact that he has a bad memory. . . .**

Our constitutional analysis is not altered by the fact that the testimony here involved an out-of-court identification that would traditionally be recognized as hearsay . . . .  The dangers associated with hearsay inspired the Court of Appeals in the present case to believe that the Constitution required the testimony to be examined for "indicia of reliability," or "particularized guarantees of trustworthiness."  **We do not think that such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross examination.   In that situation, as the Court recognized in <u>Green</u>, the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements.   We do not think that a constitutional line drawn by the Confrontation Clause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect."**

484 U.S. at 557-650 (emphasis added).

Consistent with <u>Green</u> and <u>Owens</u>, the Fifth Circuit has rejected Confrontation Clause claims based upon admission of out-of-court statements of a declarant who later testified at trial. In <u>Carson v. Collins</u>, 993 F.2d 461 (5th Cir. 1993), the Fifth Circuit held that admission of a videotaped out-of-court interview of a child regarding sexual abuse did not violate the Confrontation Clause, when the child also testified at trial.   The Fifth Circuit stated, "[Defendant] argues that because [the witness] did not make her videotaped statements under oath, in his presence, and while subject to cross-examination, use of those statements at trial deprived him of his confrontation clause rights. We cannot agree."  993 F.2d at 464.  The court continued, "**the Supreme Court has noted that introduction of out-of-court statements, even if unreliable, does not violate the confrontation clause where the declarant testifies at trial subject to full and effective cross-examination**. . . .  Carson had a full opportunity to test before the jury both [the witness's] allegations of sexual abuse and the circumstances under which she made her videotaped statement, with the benefit of both the oath and of face-to-face

confrontation. The confrontation clause requires no more." Id. (citing Owens, Green) (emphasis added); see also Maynard v. Quarterman, 2007 WL 1345687, at *3 (N.D. Tex. May 4, 2007) ("Where a witness[] testifies at trial and is subject to full and effective cross-examination, the admission of prior unsworn statements given by the witness, such as a video or audio recording[], does not violate the confrontation clause."). In Adeleke v. Johnson, the prosecution introduced a videotaped interview conducted by a counselor with a child witness in a sexual abuse case at trial. The child witness also testified at trial, but stated that she could not remember being abused. Defense counsel chose not to cross-examine the witness. The Court rejected petitioner's Confrontation Clause argument, stating "[t]he introduction of out-of-court statements, even if unreliable, does not violate the confrontation clause where the declarant testifies at trial subject to full and effective cross-examination." 2001 WL 220138, at *4 (N.D. Tex. Mar. 5, 2001).

As applied here, A.S. testified at trial, and defense counsel had a full and effective opportunity for cross-examination. Green and Owens establish that admission of A.S.'s prior unsworn out-of-court statements given to Sgt. Garcia does not violate the Confrontation Clause. As the Supreme Court explained in Owen, defense counsel had "the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even . . . the very fact that he has a bad memory," 484 U.S. at 557, but failed to take advantage of this opportunity. Petitioner's Confrontation Clause rights were not violated.[5]

---

[5] The Court also notes that Petitioner effectively waived his Confrontation Clause rights by choosing not to cross-examine A.S. on the stand. As the Fifth Circuit has explained, "**the Sixth Amendment is complied with when the prosecution calls the witness first, and then the defendant, for tactical or other reasons, voluntarily limits or chooses to forego cross-examination**. The first step – the prosecution's initial call for the witness to testify – is crucial to the instant inquiry. Only when that is done does the failure of the defense to cross-examine the witness constitute a waiver." Lowery v. Collins, 996 F.2d 770, 771-72 (5th Cir. 1995) (emphasis added); see also Buentello v. Quarterman, 2007 WL 333006, at *9 (S.D. Tex. Jan. 31, 2007) (citing Lowery).

In sum, Petitioner's Sixth Amendment Confrontation Clause rights have not been violated because A.S. testified at trial and was available for cross-examination by defense counsel.[6]  The Court briefly considers Petitioner's other proposed grounds for habeas relief.

### D.    Other Grounds for Habeas Relief

In addition to his Confrontation Clause argument, Petitioner also contends that he is entitled to federal habeas relief due to (1) improper use of hearsay evidence, (2) ineffective assistance of trial counsel, and (3) ineffective assistance of appellate counsel.  (D.E. 31 at 7-11.)

As an initial matter, violation of state hearsay rules is not cognizable on federal habeas review.  See Jones v. Cain, 600 F.3d 527, 536 (5th Cir. 2010) ("[F]ederal courts sitting in habeas do not review state courts' application of state evidence law.").  This claim must be rejected.

Petitioner's ineffective assistance of trial counsel claim is based upon "severe errors in decision making and an inability to readily be able to argue the law."  This relates most specifically to the admission of the videotaped interview, and counsel's failure to file a bill of exception.  (D.E. 31 at 9-10; D.E. 1 at 20.)   To succeed on an ineffective assistance of trial counsel claim, Petitioner "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prove prejudice, "[t]he defendant must show that

---

[6] In light of this conclusion, the Court need not address whether A.S.'s videotaped testimony had sufficient "indicia of reliability" or "particularized guarantees of trustworthiness," as discussed in Ohio v. Roberts, 448 U.S. 56 (1980) and Idaho v. Wright, 497 U.S. 805 (1990).   See Owens, 484 U.S. at 560 ("The dangers associated with hearsay inspired the Court of Appeals in the present case to believe that the Constitution required the testimony to be examined for 'indicia of reliability,' or 'particularized guarantees of trustworthiness.'   We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination.") (internal citations omitted).

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

Here, trial counsel objected to the out-of-court statements as hearsay, but was overruled. However, the mere fact that an objection is unsuccessful does not give rise to an ineffective assistance of counsel claim. See, e.g., Faubion v. U.S., 2010 WL 1542069, at *2 (N.D. Tex. Apr. 15, 2010). Further, as trial counsel objected to introduction of the evidence at trial on various grounds, the issue was preserved for appeal without filing a bill of exception. See Tex. R. App. P. 33.1; see, e.g., Sims v. State, 2007 WL 64742, at *1 (Tex. App. – Waco Jan. 10, 2007). Petitioner cannot satisfy either prong of Strickland, as he has demonstrated neither serious errors nor prejudice.

Finally, because the Court concludes that Petitioner's Confrontation Clause arguments lack merit, the Court rejects Petitioner's ineffective assistance of appellate counsel argument, which is based largely upon counsel's failure to raise the Confrontation Clause argument. (D.E. 31 at 7; D.E. 1 at 20-21.) In Smith v. Robbins, the Supreme Court explained that a petitioner alleging ineffective assistance of appellate counsel "must first show that his counsel was objectively unreasonable, in failing to find arguable issues to appeal--that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them. If [petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal."   528 U.S. 259, 285 (2000).  As Petitioner

has not demonstrated that his Confrontation Clause argument has merit, he can demonstrate neither serious errors nor prejudice, as required by Smith.[7]

Petitioner's habeas petition fails on the merits.  As such, the Court must grant Respondent's Motion (D.E. 40), and deny Petitioner's writ of habeas corpus.  (D.E. 31.) Further, in light of the analysis conducted above, Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and is therefore denied a Certificate of Appealability.  28 U.S.C. § 2253(c)(1)(A); see Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

## V.    Conclusion

For the reasons stated above, Respondent's Motion is GRANTED.  (D.E. 40.) Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus challenging his convictions for capital murder and attempted capital murder in cause number 97-CR-3827-C is DENIED, and this case is DISMISSED WITH PREJUDICE.  Petitioner is DENIED a Certificate of Appealability.

SIGNED and ORDERED this 20th day of September, 2010.

Janis Graham Jack
United States District Judge

---

[7] Petitioner also argues that appellate counsel's seven month delay in informing him that his appeal was denied constitutes ineffective assistance of counsel.  Petitioner does not demonstrate that this failure prejudiced him in any way.  Smith, 528 U.S. at 285.